ROTHSTADT, J.A.D.
*499 In Pugliese v. State-Operated School District of City of Newark, 440 N.J. Super. 501, 114 A.3d 786 (App. Div. 2015), we vacated and remanded for reconsideration *316 anew an arbitrator's award sustaining tenure charges against Felicia Pugliese and Edgard Chavez, appellants in the present matters.[1] In this appeal, we are asked to construe N.J.S.A. 18A:6-14 and determine what impact our decision to remand had on the suspended educators' entitlement to back pay while the remand was pending. The statute provides for an educator's suspension without pay for 120 days or until the issuance of a final determination of the disputed tenure charges, whichever is sooner. If the matter is not resolved *500 within 120 days, compensation must resume until a determination is reached. For the reasons that follow, we hold that the entitlement to compensation continues under the statute despite the fact there has been an initial award terminating employment that was vacated and remanded, without a dismissal of the tenure charges.
These are the facts that give rise to these appeals. In 2012, Pugliese and Chavez were tenured teachers, employed by respondent State Operated School District of the City of Newark (District), and were the subject of tenure charges filed by their schools' principals. The District certified the tenure charges and suspended both without pay, effective September 12, 2012. Arbitration hearings ensued and on February 6, 2013, an arbitrator issued a decision sustaining the tenure charges as to Chavez, which was followed by another arbitrator's decision sustaining the charges as to Pugliese on February 15, 2013.[2] The arbitrators terminated both teachers' employment with the District. On September 16, 2013, the Chancery Division confirmed the arbitration awards.
We reversed, vacating the arbitrators' awards and remanding both matters to the Commissioner to either decide certain legal defenses or delegate their determination to the arbitrators with instructions as to the proper "legal standards to [be] utilize[d], after which the arbitrators [were to] review the facts anew within this legal framework." Pugliese, 440 N.J. Super. at 503, 114 A.3d 786. On remand, the Commissioner re-assigned the matters for arbitration.
While their arbitrations were pending in July 2015, both educators filed petitions with the Commissioner, arguing they were entitled to back pay from the 121st day of their suspension up until the date when the arbitrators' decisions were rendered on *501 remand. The District filed its answers to the petitions and the Commissioner transferred the disputes to the Office of Administrative Law for a determination by an administrative law judge (ALJ).
In Pugliese's matter, the ALJ issued a decision recommending that she be paid her back pay starting from the 121st day of her suspension until the arbitrator's decision on remand was issued. According to the ALJ, our remand wiped clean the arbitration award sustaining the tenure charges, which now had to be "tried 'anew' under legal standards that had not yet been articulated" until our remand.
In the Chavez matter, a different ALJ reached a contrary conclusion. In that action, Chavez and the District cross-moved for summary decision by the ALJ.[3] On *317 May 25, 2016, the ALJ issued a decision denying Chavez's request for back pay. The judge concluded that Chavez was not entitled to compensation beyond the date of the arbitrator's initial decision because we did not reverse or dismiss the tenure charges against Chavez and, in accordance with our instructions, the arbitrator reconsidered the matter applying "the guidance" we required from the Commissioner and again sustained the charges against him. The ALJ stated by reversing and remanding the matter, our decision could not "reasonably be characterized as a reversal within the meaning of N.J.S.A. 18A:6-14.... As there has never been a dismissal of the charge before or after the Appellate Division['s] [d]ecision regarding Chavez, he is not entitled to the restoration of his pay under N.J.S.A. 18A:6-14." The District and Chavez filed exceptions to their respective adverse ALJ's decisions. In both matters, the *502 Commissioner issued final decisions concluding that neither Pugliese nor Chavez was entitled to back pay.
Specifically, on April 12, 2016, the Commissioner issued a decision finding that the ALJ in Pugliese's case "erroneously interpreted N.J.S.A. 18A:6-14." He found that because our decision remanded, but did not dismiss, the tenure charges as part of the appeal process, Pugliese was not entitled to back pay under N.J.S.A. 18A:6-14. He noted that our "reversal and remand of these proceedings did not re-trigger the 120-day rule because there is no mechanism for such contained within N.J.S.A. 18A:6-14." He further found that the February 15, 2013 arbitration award constituted a final decision terminating Pugliese's right to back pay under the statute because "there [was] a determination by an arbitrator sustaining the tenure charges on the original hearing[. Therefore,] the tenured employee is no longer entitled to full pay under the 120-day provision in N.J.S.A. 18A:6-14, which is consistent with the result of final Commissioner decisions and the [statute's] Legislative intent...."
On July 11, 2016, the Commissioner issued a final decision, adopting the ALJ's decision in Chavez's case and dismissing his appeal. The Commissioner again relied upon the fact that, in our opinion, we did not dismiss the charges. According to the Commissioner, our decision
did not trigger the reinstatement of ... [Chavez] with full pay as of the time of [his] suspension pursuant to N.J.S.A. 18A:6-14 ; rather the matter was remanded as a part of ... [Chavez's] appeal process.... As a result, ... [Chavez] is not entitled to the restoration of his pay under N.J.S.A. 18A:6-14 for the period from the 121st day of his suspension until [the a]rbitrator ... issued his second decision on March 17, 2016.
On appeal from the Commissioner's final decisions denying their requests for back pay until the arbitration decision on remand, Pugliese and Chavez argue that the legislative history of N.J.S.A. 18A:6-14 and the statute's purpose support their claims for back pay. We find merit to this argument.
Our role in reviewing an administrative agency's final decision is limited.
*503 In re Stallworth, 208 N.J. 182, 194, 26 A.3d 1059 (2011). To reverse an agency's decision, we must find that the agency's decision was "arbitrary, capricious, or unreasonable, or ... not supported by *318 substantial credible evidence in the record as a whole." Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980) ). Accordingly, the scope of our "review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283-84, 74 A.3d 959 (App. Div. 2013) (citing Stallworth, 208 N.J. at 194, 26 A.3d 1059 ).
We afford "considerable weight to a state agency's interpretation of a statutory scheme that the legislature has entrusted to the agency to administer." Ardan v. Bd. of Review, 444 N.J. Super. 576, 584, 134 A.3d 1018 (App. Div. 2016) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262, 989 A.2d 1254 (2010) ), aff'd in part and modified in part, 231 N.J. 589, 177 A.3d 768 (2018). "We will defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is 'plainly unreasonable.' " Ibid."However, we are 'not bound by an agency's interpretation of a statute or its determination of a strictly legal issue[.]' " Ibid. (alteration in original) (quoting Lavezzi v. State, 219 N.J. 163, 172, 97 A.3d 681 (2014) ); Kolodziej v. Bd. of Educ. of S. Reg'l High Sch. Dist., Ocean Cty., 436 N.J. Super. 546, 550, 95 A.3d 763 (App. Div. 2014) (holding that this court reviews agency decisions on statutory interpretation de novo).
Applying these guiding principles, we observe that this appeal involves a purely legal issue, the interpretation of a statute subject to our de novo review. Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dept. of Envtl. Prot., 191 N.J. 38, 48, 921 A.2d 1122 (2007) (citing *504 In re Taylor, 158 N.J. 644, 656-58, 731 A.2d 35 (1999) ). We conclude that the Commissioner's interpretation was incorrect.
"When interpreting a statute, our main objective is to further the Legislature's intent," In re Pontoriero, 439 N.J. Super. 24, 35, 106 A.3d 532 (App. Div. 2015) (quoting TAC Assocs. v. N.J. Dep't of Envtl. Prot., 202 N.J. 533, 540, 998 A.2d 450 (2010) ), "in light of the language used and the objects sought to be achieved." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 554, 964 A.2d 741 (2009) (quoting State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997) ). This court's "primary objective is to ascertain the intent of the Legislature by first looking to the plain words of the statute. We give 'the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole.' " N.J. Election Law Enf't Comm'n v. DiVincenzo, 451 N.J. Super. 554, 576, 169 A.3d 1002 (App. Div. 2017) (citations omitted).
"Where a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning." N.J. Div. of Youth and Family Servs. v. I.S., 214 N.J. 8, 29, 66 A.3d 1271 (2013) (citation omitted). "In interpreting a statute, we strive to give effect to every word rather than to ascribe a meaning that would render part of the statute superfluous." Id. at 36, 66 A.3d 1271 (citing Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990) ). Determining the legislative intent "is often assisted by interpreting a statute consistently with the overall statutory scheme in which it is *319 found." Bosland, 197 N.J. at 554, 964 A.2d 741 (citation omitted). Moreover, "in order to give proper effect to the Legislature's intent, a provision must be read sensibly within the entire legislative scheme of which it is part." I.S., 214 N.J. at 36, 66 A.3d 1271 (citing Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 451, 55 A.3d 65 (2013) ). "When the plain meaning is unclear or ambiguous, we next consider extrinsic evidence of the Legislature's intent, including legislative *505 history and statutory context." Pontoriero, 439 N.J. Super. at 36, 106 A.3d 532 (citing TAC Assocs., 202 N.J. at 541, 998 A.2d 450 ).
The statute at issue here, N.J.S.A. 18A:6-14, states:
Upon certification of any charge to the commissioner, the board may suspend the person against whom such charge is made, with or without pay, but, if the determination of the charge by the arbitrator[4 ] is not made within 120 calendar days after certification of the charges, excluding all delays which are granted at the request of such person, then the full salary (except for said 120 days) of such person shall be paid beginning on the one hundred twenty-first day until such determination is made. Should the charge be dismissed at any stage of the process, the person shall be reinstated immediately with full pay from the first day of such suspension. Should the charge be dismissed at any stage of the process and the suspension be continued during an appeal therefrom, then the full pay or salary of such person shall continue until the determination of the appeal. However, the board of education shall deduct from said full pay or salary any sums received by such employee or officers by way of pay or salary from any substituted employment assumed during such period of suspension. Should the charge be sustained on the original hearing or an appeal therefrom, and should such person appeal from the same, then the suspension may be continued unless and until such determination is reversed, in which event he [or she] shall be reinstated immediately with full pay as of the time of such suspension.
We have had an earlier opportunity to address the Legislature's intent in enacting N.J.S.A. 18A:6-14. We concluded it was to alleviate "the economic hardship endured by teachers ... suspended without pay pending the outcome of charges filed against them and certified for [a] hearing...." In re Grossman, 127 N.J. Super. 13, 35-36, 316 A.2d 39 (App. Div. 1974). We observed that "in many instances, because of the volume of matters awaiting hearing, a prompt disposition of charges is not feasible[,]" and therefore,
*506 the obvious intent and purpose of [ N.J.S.A. 18A:6-14 ] was to alleviate the financial plight of those affected by providing for the payment of their full salary ... from the 121st day following the certification of charges until the determination thereof by the [arbitrator], or in the case of an appeal by a board from a decision adverse to it, until the determination of the appeal.
[ Id. at 36, 316 A.2d 39.]
*320 The plain language of N.J.S.A. 18A:6-14 addresses various circumstances that lead to the payment of compensation when a teacher is suspended. When a teacher is suspended without pay, the statute provides for compensation to resume after 120 days "if the determination of the charge by the arbitrator is not made within" that time, or upon dismissal of the charges, or, if the charges are initially sustained but reversed on appeal, it requires "immediate[ ] [reinstatement] with full pay as of the time of such suspension." N.J.S.A. 18A:6-14.
Because the plain meaning of N.J.S.A. 18A:6-14 does not address what occurs when we vacate and remand an arbitrator's determination without dismissing the charges, we "consider extrinsic evidence of the Legislature's intent, including legislative history and statutory context." Pontoriero, 439 N.J. Super. at 36, 106 A.3d 532 (citation omitted). We find, however, no clarification in the statute's legislative history.[5] But, given the lack of legislative action or case law challenging our earlier determination of the legislative intent behind the statute, we hew to our original conclusion that it was the "obvious intent and purpose of the [statute] ... to alleviate the financial plight of" educators awaiting a determination of the charges brought against them. Grossman, 127 N.J. Super. at 36, 316 A.2d 39.
Turning to the impact of our reversing and remanding an arbitrator's decision about an educator's tenure charges, we maintain *507 our well-settled view of the effect of our opinions that vacate determinations made by agencies and trial courts. We have summarized the impact of an order vacating and remanding an initial decision by analogizing it to the grant of a motion for a new trial. We stated:
The vacating order [is] akin to an order granting a new trial. The latter has always been considered interlocutory; the litigation goes on. The order vacating ... did not wind up the proceedings; implicit in such an order is the fact that it will be superseded by other proceedings...."
[ In re Assignment for Old Colony Coal Co., 49 N.J. Super. 117, 123, 139 A.2d 302 (App. Div. 1958).]
Consistent with our view of the impact of our earlier decision and the legislature's concern for the financial well-being of educators subject to tenure charges, we are constrained to reverse the Commissioner's determination in each case. We conclude that our vacating of the arbitrator's determinations meant there was no final decision made that terminated Pugliese's and Chavez's right to compensation once it resumed after 120 days of their suspensions.[6] Accordingly, Chavez remained entitled to *321 pay from the *508 121st day of his suspension without pay until March 17, 2016, the date of the arbitrator's decision on remand from which Chavez did not appeal. Pugliese's right to compensation will continue to the same date if we affirm the arbitrator's last determination. If we vacate and reverse that determination, under the statute, Pugliese will be entitled to full pay from the date of her suspension to date. If we vacate and remand, Pugliese's right to compensation will continue from 121 days after her suspension until a final determination is made.
Reversed.

We have consolidated these two matters for purposes of this opinion.

The arbitrations are held pursuant to the Tenure Employees Hearing Law (TEHL), N.J.S.A. 18A:6-10 to -18.1, as amended by the Teacher Effectiveness and Accountability for the Children of New Jersey Act (TEACHNJ), N.J.S.A. 18A:6-123.

While their applications were pending, on March 17, 2016, an arbitrator issued an award sustaining the tenure charges filed against Chavez and terminating his employment with the District. Chavez did not file an appeal from that award. On June 8, 2016, a different arbitrator sustained the tenure charges filed against Pugliese and terminated her employment. A Chancery judge affirmed the arbitrator's award. Pugliese appealed and our decision is pending. Felicia Pugliese v. State-Operated Sch. Dist. of the City of Newark, Essex Cty., No. A-2196-16 (App. Div. filed Feb. 1, 2017).

Decisions made by the arbitrator in these matters are considered final, not appealable to the Commissioner. "The determination [is] subject to judicial review and enforcement as provided pursuant to N.J.S.[A.] 2A:24-7 through N.J.S.[A.] 2A:24-10." Pugliese, 440 N.J. Super. at 510, 114 A.3d 786 (second and third alterations in original) (quoting N.J.S.A. 18A:6-17.1(e) ). "A reviewing court may vacate an arbitration award due to corruption, fraud, ... or misconduct, or if the arbitrators ... 'executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.' " Ibid. (quoting N.J.S.A. 2A:24-8 ).

The most recent change occurred in August 6, 2012. S. 1455 (2012). The amendment replaced "Commissioner of Education" with "arbitrator," "120 calendar 105 business" with "120 calendar," "120 105 business" with "120," and "twenty first sixth business" with "twenty-first" in the first sentence. Ibid. It also added the language "at any stage of the process" in the second and third sentences. Ibid.

We note that our decision today is consistent with decisions by the Office of Administrative Law when its judges have considered the issue in the past. See, e.g., In the Matter of Tenure Hearing of Thomas, EDU 1763-08, final decision, 2008 WL 4861480 (May 23, 2008), http://njlaw.rutgers.edu/collections/oal/final/edu1763-08.pdf (where an ALJ rendered an initial decision sustaining charges against an educator and the Commissioner remanded the matter back for further proceedings, where the ALJ again sustained the charges and authorized back pay starting from the 121st day of the teacher's suspension until the date of the Commissioner's ensuing final decision, which adopted the ALJ's decision in its entirety). See also In the Matter of the Tenure Hearing of Brian Yatauro, EDU 00793-99S and 08619-97, final decision, 1999 WL 33883419 (Oct. 13, 1999), http://njlaw.rutgers.edu/collections/oal/final/edu00793-99.pdf, (where the Commissioner rejected an ALJ's decision that an employee's "entitlement to compensation terminated with the determination of the ALJ in his Initial Decision on the tenure charge matter," finding that "such entitlement, ... concluded [later, after] the date of the Commissioner's final decision in the tenure matter...."); Town of West New York v. Maloney, CAF 01344-09, initial decision, 2010 WL 2235095 (May 28, 2010), http://njlaw.rutgers.edu/collections/oal/html/initial/caf01344-09_1.html ("Suspension without pay becomes suspension with pay on the 121st day by the clear language of the statute, and that status continues until the Commissioner reaches his final determination.").