NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5826-13T2

MARGO S. ARDAN,

     Appellant,

v.

BOARD OF REVIEW, LOURDES
MEDICAL CENTER OF BURLINGTON
COUNTY, INC., and ALLIANCE
HEALTHCARE,

     Respondents.

_____

<table>
<tr><td><b>APPROVED FOR PUBLICATION</b></td></tr>
<tr><td><b>April 25, 2016</b></td></tr>
<tr><td><b>APPELLATE DIVISION</b></td></tr>
</table>

Argued March 7, 2016 — Decided April 25, 2016

Before Judges Simonelli, Carroll and Sumners.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 412,283.

Keith Talbot argued the cause for appellant (Legal Services of New Jersey, attorneys; Mr. Talbot, on the briefs).

Christopher M. Kurek, Deputy Attorney General, argued the cause for respondent Board of Review (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mr. Kurek, on the brief).

Cindy Perr, Associate General Counsel, argued the cause for respondent Lourdes Medical Center of Burlington County, Inc. (Jennifer L. Schwartz, Vice President Legal

Affairs & General Counsel, attorney, joins
in the brief of respondent Board of Review).

Respondent Alliance Healthcare has not filed
a brief.

The opinion of the court was delivered by

SIMONELLI, J.A.D.

Appellant Margo S. Ardan appeals from the December 13, 2013 final decision of respondent Board of Review (Board), which affirmed the September 26, 2013 decision of the Appeal Tribunal that Ardan was disqualified from receiving benefits pursuant to N.J.S.A. 43:21-5(a) because she left her employment at respondent Lourdes Medical Center of Burlington County, Inc. (Lourdes) without good cause attributable to the work. On appeal, Ardan contends that she had medical good cause to leave her employment with Lourdes; an amendment to N.J.S.A. 43:21-5(a), which should be applied retroactively, permitted her to leave her employment for equal or better employment elsewhere; and the Board failed to make adequate factual findings. We reject these contentions, and affirm.

We derive the following facts from the record. Ardan was employed by Lourdes as a registered nurse from September 7, 2010, until she resigned on November 7, 2012. Before resigning, Ardan found a "desk job" at Alliance Healthcare (Alliance) that was less physically demanding and provided better work hours and

comparable pay. In her resignation letter to Lourdes, Ardan said she was leaving "to seek other opportunity." She never mentioned having any medical condition that affected her ability to work, nor did she request an accommodation.

On November 12, 2012, Ardan began working for Alliance as a healthcare communicator. She was separated from that job after seven weeks because she could not pass a certification test. She filed a claim for unemployment benefits on December 23, 2012.

On January 28, 2013, the Deputy Director of the Division of Unemployment and Disability Insurance determined that Ardan was disqualified for benefits as of November 4, 2012, because she left work at Lourdes voluntarily without good cause attributable to the work. The Deputy Director also determined that the seven weeks Ardan worked and wages she earned at Alliance were insufficient to remove the disqualification.

Ardan appealed to the Appeal Tribunal. At a hearing, Ardan never mentioned any medical condition that affected her ability to work at Lourdes. Rather, she testified that she left that job because she was forty-nine years old, was running around for twelve hour shifts, and the job "just got too difficult." In a February 25, 2013 decision, the Appeal Tribunal determined that Ardan left work at Lourdes for employment with Alliance and was

disqualified for benefits under N.J.S.A. 43:21-5(a) as of November 4, 2012, because she left work voluntarily without good cause attributable to the work.

Ardan appealed to the Board, claiming for the first time that she left Lourdes due to a non-work connected medical condition that was aggravated by her working conditions. She submitted medical documentation supporting her claim, including a report from her treating chiropractor that was dated after the Appeal Tribunal's February 25, 2013 decision. She also submitted medical records, which showed she had significant problems with her neck, lower back and left knee that pre-dated her employment with Lourdes. Ardan also claimed for the first time that there was no other suitable work available at Lourdes.

In an August 16, 2013 decision, the Board remanded the matter to the Appeal Tribunal for a new hearing and decision on all issues. At the hearing, Ardan admitted that she never advised Lourdes of her medical condition or provided Lourdes with any medical documentation. She also admitted that she never requested an accommodation or leave of absence, but testified, with no documentary support, that there was no other suitable work available at Lourdes.

In a September 26, 2013 decision, the Appeal Tribunal found that Ardan: (1) left work at Lourdes to accept employment with

another employer; (2) left work at Lourdes because of a physical condition personal to her that was not work-connected and made it necessary for her to leave her job due to an inability to perform the job; (3) never informed Lourdes she was leaving for medical reasons; (4) never requested a leave of absence, accommodation, or change in duties or schedule; and (5) never afforded Lourdes an opportunity to make changes to her schedule and/or duties to accommodate her medical condition. Accordingly, the Appeal Tribunal concluded that Ardan was disqualified for benefits under N.J.S.A. 43:21-5(a) and N.J.A.C. 12:17-9.1(e)(9) as of November 4, 2012, because she left work at Lourdes voluntarily without good cause attributable to the work.

Ardan appealed to the Board. The Board reviewed the record and, in a December 13, 2013 final decision, affirmed for the reasons expressed by the Appeal Tribunal. This appeal followed.

Our review of an administrative agency decision is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). "In reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)) (alteration omitted). "If the

Board's factual findings are supported 'by sufficient credible evidence, [we] are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982)). We also give due regard to the agency's credibility findings. Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997). "Unless . . . the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, supra, 152 N.J. at 210.

Moreover, we "should give considerable weight to a state agency's interpretation of a statutory scheme that the legislature has entrusted to the agency to administer." In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010). "We will defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is 'plainly unreasonable.'" Ibid. However, we are "not bound by an agency's interpretation of a statute or its determination of a strictly legal issue[.]" Lavezzi v. State, 219 N.J. 163, 172 (2014) (alteration omitted) (citation omitted). "Thus, to the extent [the agency's] determination constitutes a legal conclusion, we review it de novo." Ibid.

An individual is disqualified for unemployment benefits:

> For the week in which the individual has left work voluntarily without good cause

attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment[.]

[N.J.S.A. 43:21-5(a).]

An employee who has left work voluntarily bears the burden of proving that he or she "did so with good cause attributable to work." Brady, supra, 152 N.J. at 218 (citation omitted); N.J.A.C. 12:17-9.1(c). "While the statute does not define 'good cause,' our courts have construed the statute to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Domenico v. Bd. of Review, 192 N.J. Super. 284, 287 (App. Div. 1983) (quoting Condo v. Bd. of Review, 158 N.J. Super. 172, 174 (App. Div. 1978)). N.J.A.C. 12:17-9.1(b) defines "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment."

An employee who leaves work for good, but personal, reasons is not deemed to have left work voluntarily with good cause. Brady, supra, 152 N.J. at 213. Thus, a claimant who leaves work for good, but personal, reasons is subject to disqualification under N.J.S.A. 43:21-5(a). Morgan v. Bd. of Review, 77 N.J. Super. 209, 214 (App. Div. 1962). There is a limited exception

to this general rule under N.J.A.C. 12:17-9.3(b), which provides as follows, in pertinent part:

> An individual who leaves a job due to a physical and/or mental condition or state of health which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability.

An employee who is unable to work because of illness and "makes an attempt to protect his or her employment" is not deemed to have voluntarily quit without good cause attributable to the work. Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 376 (1989) (citing Self, supra, 91 N.J. at 457; DeLorenzo v. Bd. of Review, 54 N.J. 361, 363 (1969)).

Although Ardan's medical evidence showed she was unable to work at Lourdes due to a non-work connected medical condition that was aggravated by her working conditions, she made no attempt whatsoever to protect her employment. She never notified Lourdes of her medical condition, nor did she submit any medical documentation or request an accommodation. Instead, she resigned, merely advising Lourdes that she was leaving "to seek other opportunity" and depriving Lourdes of the opportunity to address the matter and determine if there was an

accommodation. Ardan's self-serving testimony was insufficient to establish there was no other suitable work available.

We conclude that the Board reasonably interpreted N.J.A.C. 12:17-9.3(b) to require an employee to notify an employer of a medical condition that was aggravated by the working conditions, request an accommodation, and afford the employer an opportunity to address the matter to determine whether there was other suitable work available. Ardan's failure to do so disqualifies her for benefits under N.J.S.A. 43:21-5(a) because she left work voluntarily without good cause attributable to the work.

Ardan was also disqualified for benefits under N.J.A.C. 12:17-9.1(e)(9), which provides that an individual who leaves work "[t]o accept other work" is deemed to have left work voluntarily without good cause attributable to the work. We reject Arden's argument that the following amendment to N.J.S.A. 43:21-5(a)[1] should be applied retroactively:

> This subsection shall not apply to an individual who voluntarily leaves work with one employer to accept from another employer employment which commences not more than seven days after the individual leaves employment with the first employer, if the employment with the second employer has weekly hours or pay not less than the hours

---

[1] This amendment to N.J.S.A. 43:21-5(a) became effective May 4, 2015, nearly one and one-half years after the Board's final decision in this matter.

or pay of the employment of the first employer[.][2]

Generally, the law favors prospective, rather than retroactive, application of new legislation unless a recognized exception applies. James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 556 (2014). "The preference for prospective application of new legislation 'is based on [the Court's] long-held notions of fairness and due process.'" Id. at 563 (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45 (2008)).

Courts must apply a two-part test to determine whether a statute should be applied retroactively: (1) whether the Legislature intended to give the statute retroactive application; and (2) whether retroactive application "will result in either an unconstitutional interference with vested rights or a manifest injustice." Ibid. (quoting In re D.C., 146 N.J. 31, 50 (1996) (quoting Phillips v. Curiale, 128 N.J. 608, 617 (1992))).

---

[2]   To support her argument that we should apply the amendment retroactively, Ardan relies on an unpublished opinion, Goryn v. Bd. of Review, Nos. A-1196-13 and A-1197-13 (App. Div. July 6, 2015). However, unpublished opinions do not constitute precedent or bind us, Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001); R. 1:36-3.  Ardan also relies on an "Administrative Instruction."  However, an agency regulation or rule which contravenes a statute is of no force, and the statute will control.  L. Feriozzi Concrete Co. v. Casino Reinvestment Dev. Auth., 342 N.J. Super. 237, 251 (App. Div. 2001).

Under the first part of the James two-part test, there are "three circumstances that will justify giving a statute retroactive effect: (1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of parties so warrant." Ibid. (citations omitted).

Under the first circumstance, the Legislature may demonstrate its intent to retroactively apply a statute either by stating so in the language of the statute or legislative history, or by implication. Id. at 564 (citation omitted). If the Legislature expressly states a statute is to be applied retroactively, such intent should be given effect "absent a compelling reason not to do so." Ibid. Implied intent, however, "may be found from the statute's operation when retroactive application is necessary to fulfill legislative intent," or is otherwise "necessary to make the statute workable or to give it the most sensible interpretation." Ibid. (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)).

Here, the Legislature did not expressly provide for retroactive application of the amendment to N.J.S.A. 43:21-5(a). The amendment does not refer to any retroactive application, and the present tense of the language in the statute generally suggests only prospective application. Although the amendment

provides an exception for those individuals who voluntarily leave work with one employer to accept work with another employer, it does not remotely suggest or imply that the exception applies retroactively to individuals who did so prior to the amendment.

Under the second circumstance, a statute may be applied retroactively if it is curative, meaning "designed to 'remedy a perceived imperfection in or misapplication of a statute.'" Ibid. (quoting Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 386 (App. Div. 1992), aff'd, 131 N.J. 400 (1993)). "Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration." Ibid. (citation omitted). To be considered curative, however, the statute must "not alter the act in any substantial way, but merely clarif[y] the legislative intent behind the [previous] act." Ibid. (second alteration in original) (quoting 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581 (1999)).

Here, the amendment to N.J.S.A. 43:21-5(a) was not designed to remedy a perceived imperfection or misapplication of the statute, nor did it rectify an error in the statute or its administration or clarify the legislative intent behind the statute. Rather, the amendment altered the statute in a

substantial way by creating an entirely new exception for individuals who leave work for other employment. Accordingly, the "curative" justification for retroactive application does not apply to the amendment.

Lastly, under the third circumstance, absent clear intent for prospective application, the parties' expectations may warrant retroactive application of the statute. Id. at 565 (citation omitted). In this case, at the time of the Board's final decision, none of the parties had any expectation that individuals who voluntarily left work with one employer to accept work with another employer would not be subject to disqualification. To the contrary, N.J.A.C. 12:17-9.1(e)(9) clearly provided that an individual who left work to accept other work was deemed to have left work voluntarily without good cause attributable to the work.

Even assuming the Legislature clearly intended retroactive application of the amendment, or the amendment is clearly curative, the court must still consider the second part of the James two-part test addressing whether retroactive application will result in either an unconstitutional interference with vested rights or a manifest injustice. Ibid. This part "focuses on 'whether the parties relied on prior law to their detriment, such that retroactive application would cause a

deleterious and irrevocable result.'" Ibid. (quoting Innes v. Innes, 117 N.J. 496, 511 (1990)). "[R]eliance on existing law by the affected party and the unfairness of changing that law are the important factors in making the retroactivity decision." Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 572 (2008) (alteration in original) (quoting In re D.C., supra, 146 N.J. at 58). "In evaluating those factors, a court must weigh the 'public interest in the retroactive application of the statute against the affected party's reliance on previous law, and the consequences of that reliance.'" Ibid. (quoting Nelson v. Bd. of Educ., 148 N.J. 358, 372 (1997)).

Regardless of whether retroactive application of the amendment to N.J.S.A. 43:21-5(a) was justified under one of the three aforementioned circumstances, there is certainly a manifest injustice to the Board since it reasonably relied on the pre-amended statute and N.J.A.C. 12:17-9.1(e)(9) in determining that Ardan was disqualified for benefits for leaving work voluntarily without good cause attributable to the work. Accordingly, even if permissible under part one of the James test, retroactive application still fails part two because it "would cause a deleterious and irrevocable result." James, supra, 216 N.J. at 565 (citations omitted). We, therefore, affirm the Board's decision.

We have considered Ardan's contention that the Board failed to make adequate factual findings in light of the record and applicable legal principles and conclude it is without merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The record amply supports the Board's decision, Rule 2:11-3(e)(1)(D), and the decision is not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5826-13T2