**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4224-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MAURICE BRACK, a/k/a
MAURICE BARRACK,
MAURICE BLACK,
MAURICE BRACK,
MAURICE L. BRACK,
SOCCA BOPUM, and
SOCKA BOPA,

     Defendant-Appellant.

_____

Submitted November 14, 2018 – Decided December 21, 2018

Before Judges Hoffman and Firko.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 08-10-0851.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael J. Confusione, Designated Counsel; William P. Welaj, on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Michelle J. Ghali, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Maurice Brack appeals from the Law Division's denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. In his petition, defendant argued he had ineffective assistance of counsel because a mistake of fact defense was not raised, and counsel failed to argue the jury's verdict was against the weight of the evidence. He also argued that he should not have been waived up to the Law Division because he was only fourteen years old at the time he fatally beat the victim on August 18, 2006, and that the new juvenile waiver statute, N.J.S.A. 2A:4A-26.1(c)(1), enacted on March 1, 2016, should apply to his case. The PCR court disagreed and denied his petition, concluding:

> Inasmuch as there exists no grounds on which to grant petitioner post-conviction relief because his trial and/or appellate counsel was ineffective, petitioner's argument that P.L. 2015, c. 89 should be applied retroactively to his case must be rejected.

> While this PCR was pending, State in the Interest of J.F., 446 N.J. Super. 39 (App. Div. 2016) was decided. Judge Koblitz, for the court, found that P.L. 2015, c. 89 was an ameliorative statute requiring retroactive application. The J.F. court analyzed the recent

2

legislation under the well-known test announced by our Supreme Court in Gibbons v. Gibbons, 86 N.J. 515 (1981).

The Gibbons court ruled that retroactivity should be given:

1. To statutes about which the legislature either expressly or impliedly expressed that the law be retroactive;

2. To statutes which are ameliorative or curative; or

3. "[I]n the absence of a clear expression of legislative intent that the statute is to be applied prospectively, such considerations as the expectations of the parties may warrant retroactive application."

[Gibbons, 86 N.J. at 522-23.]

Applying those factors to this case, it is clear that there is no legislative expression regarding retroactivity.

This appeal followed. On appeal, defendant maintains that the new juvenile waiver statute should be applied retroactively. We disagree and affirm.

On appeal, defendant specifically argues:

POINT I:

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF SINCE N.J.S.A. 2A:4A-26.1(c)(1), WHICH PROVIDES THAT A JUVENILE CANNOT BE WAIVED TO THE LAW DIVISION UNLESS THE STATE CAN ESTABLISH THE

3

JUVENILE WAS 15 YEARS OF AGE OR OLDER AT THE TIME OF THE DELINQUENT ACT, APPLIED RETROACTIVELY TO THE DEFENDANT'S CASE, IN WHICH HE WAS 14 YEARS OLD AT THE TIME OF THE OFFENSE IN QUESTION.

A.    N.J.S.A. 2A:4A-26.1(c)(1) APPLIES RETROACTIVELY TO THE PRESENT CASE PURSUANT TO PREVAILING CASE LAW.

B.    THE DOCTRINES OF FUNDAMENTAL FAIRNESS AND MANIFEST INJUSTICE REQUIRE A RETROACTIVE APPLICATION OF N.J.S.A. 2A:4A-26.1(c)(1) TO THE PRESENT CASE.


POINT II:

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO ASSERT A MISTAKE OF FACT DEFENSE AT TRIAL.

I.

When defendant was fourteen years old, he was arrested and charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2), in connection with the brutal, gang-related murder of Rhykime Richardson, after violently assaulting him and leaving him to die in a parking lot in Elizabeth. In addition, defendant was

4

charged with third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), as a juvenile. Following a probable cause hearing on August 14, 2008, a prior judge waived jurisdiction from the Family Division to the Law Division.

A Miranda[1] hearing was conducted before Judge Scott J. Moynihan, who found defendant's statement admissible. In October 2010, defendant was convicted after a jury trial of first-degree murder, and acquitted as to the weapons charges. He was sentenced to thirty-four years imprisonment with a thirty-year parole disqualifier. Defendant's conviction and sentence were affirmed. State v. Brack, No. A-5479-10 (App. Div. Oct. 22, 2014), certif. denied, 221 N.J. 287 (2015).

On July 15, 2015, defendant filed a PCR petition. Following argument, Judge Moynihan denied the petition as to the ineffective assistance of counsel claims, and reserved decision as to whether the new juvenile waiver statute applied retroactively in light of this court's decision in State in the Interest of J.F., 446 N.J. Super. 39 (App. Div. 2016). In a comprehensive written opinion, Judge Moynihan denied the petition without a hearing.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

The record in this matter discloses that defendant, whose nickname was "No Bullshit," was a member of a junior gang, "LOX," and had aspirations of becoming a member of the Bloods. He hoped to be initiated into the gang within a few weeks of the crimes, and stated that murdering someone by stabbing them would have his status "am[p]ed" up, and would put him "up there towards the Big Homies." Lasheem Lee was one of the so-called "Big Homies." Earlier in the evening on the day of the murder, defendant attended Lee's birthday party, hosted by his girlfriend, "Snake." The victim entered the courtyard where the party was going on and punched Lee in the face, causing a bottle of wine to fall out of his hand. Lee shouted, "[h]e just hit me," and yelled, "catch his ass," and "go get that," referring to the victim as he fled.

A crowd of fifty or more people, including defendant, chased after the victim, who was running for his life. Leading the chase, defendant hopped over a fence with others and stole bicycles to aid their pursuit through residential backyards. The victim, being alarmed by the size of the crowd of fifty or sixty people, yelled to one of the property owners, "I'm getting out of your backyard but call the police please." After pursuing the victim, defendant ripped his pants and lacerated his hand and leg. The victim ran away and fell down in a nearby parking lot, where defendant prevented him from moving, while beating,

stabbing, and "stomping him out," along with others, who slammed him with a bike and told defendant, "he's all yours." The victim was "just curled up like a baby," and "being beat while he was unconscious," according to defendant.

The victim died from blunt force trauma to his head and from stab wounds that punctured his lung and caused a "torrential" amount of blood to fill his lung, according to the autopsy report. Following the victim's death, defendant referred to himself as "homicide," and he "took pride" in what he did.

## II.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Goodwin, 173 N.J. 583, 593 (2002) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). The process affords an adjudged criminal defendant a "last chance to challenge the 'fairness and reliability of a criminal verdict . . . .'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. Feaster, 184 N.J. 235, 249 (2005)); see also Rule 3:22-1. "Post-conviction relief is neither a substitute for direct appeal, [Rule] 3:22-3, nor an opportunity to relitigate cases already decided on the merits, [Rule] 3:22-5." Preciose, 129 N.J. at 459; see also State v. Echols, 199 N.J. 344, 357 (2009).

Merely raising a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.

1999).  Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance of counsel, material issues of disputed fact lie outside the record, and resolution of the issues necessitates a hearing.  R. 3:22-10(b); State v. Porter, 216 N.J. 343, 354 (2013).  A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim," and we review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion.  Preciose, 129 N.J. at 463.

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record."  State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)).  Thus, if warranted, we may "conduct a de novo review of both the factual findings and legal conclusions of the PCR court."  Ibid.  (citing Harris, 181 N.J. at 421).

A petition for PCR may be granted upon the following grounds:

> (a)  Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey;

(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;

(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law if raised together with other grounds cognizable under paragraph (a), (b), or (d) of this rule. Otherwise a claim alleging the imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law shall be filed pursuant to [Rule] 3:21-10(b)(5).

(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law or statutory remedy.

(e) A claim of ineffective assistance of counsel based on trial counsel's failure to file a direct appeal of the judgment of conviction and sentence upon defendant's timely request.

[R. 3:22-2.]

III.

Defendant argues the PCR judge erred in failing to apply N.J.S.A. 2A:4A-26.1(c)(1) retroactively pursuant to J.F., and consequently, his conviction must be vacated and this matter should be remanded to the Family Court for an adjudication. We disagree.

In J.F., we undertook a detailed analysis of the revised waiver statute and affirmed the trial court's denial of a waiver request involving a murder allegedly

9

committed by a fourteen-year-old minor. 446 N.J. Super. at 41-42. The trial court in J.F. found, "strong and compelling prospects for rehabilitation substantially outweigh[ed] the standard of the attenuated argument of deterrence in the case." Id. at 51. The trial judge made the waiver decision on August 13, 2015, three days before the Governor signed the revised waiver statute into law. Id. at 52. The trial judge did not apply the new statute that became effective on March 1, 2016. Id. at 52-53.

We noted "[u]nder the revised waiver statute, a juvenile cannot be waived to the Law Division unless the State can establish that 'the juvenile was [fifteen] years of age or older at the time of the delinquent act.'" Ibid. (citing N.J.S.A. 2A:4A-26.1(c)(1)).

We concluded the revised statute applied to J.F. because the new statute:

> ameliorate[d] the punitive sentencing previously meted out to adolescent offenders after waiver. The legislative action was also intended to address the treatment needs of children. The increase in the minimum waiver age is part of that emphasis on rehabilitation rather than punishment, a part of the effort to ensure that children do not become prey to adult inmates nor suffer the many societal consequences of an adult criminal record.
>
> [Id. at 55 (footnotes omitted).]

A-4224-16T4

Furthermore, we noted "[t]he State ma[de] no argument that it would suffer an 'unconstitutional interference with a vested right or a manifest injustice.'" Id. at 56 (quoting Ardan v. Board of Review, 444 N.J. Super. 576, 589 (App. Div. 2016)). "Retroactively applying the age requirement of the revised waiver statute would impose no 'unfairness [or] inequity.'" Id. at 56-57 (alteration in original) (quoting Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 572 (2008)).

Here, Judge Moynihan correctly found that: "The difference between this case and J.F. is that J.F's waiver hearing was decided on August 13, 2015, three days after the enactment of P.L. 2015, c.89. . . . [and that] J.F. had not been adjudicated, nor his disposition entered, prior to the passage of the new law." (footnote omitted).

Brack was sentenced prior to the enactment of the new law thus distinguishing his case from the holding in J.F. "Generally, newly enacted laws are applied prospectively." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 387 (2016). The presumption can only be overcome by showing the Legislature intended retroactive application.

In Ardan, our Court reiterated settled rules of statutory construction "based on our long-held notions of fairness and due process." 231 N.J. at 610

11

(quoting James v. N.J. Mfrs. Co., 216 N.J. 552, 563 (2014)). As instructed in Ardan, "[w]e consider (1) 'whether the Legislature intended to give the statute retroactive application' and (2) whether retroactive application 'will result in either an unconstitutional interference with vested rights or a manifest injustice.'" Ibid. (quoting James, 216 N.J. at 563).

For these reasons we affirm Judge Moynihan's decision not to retroactively apply N.J.S.A. 2A:4A-26.1(c)(1). To the extent we have not addressed defendant's other arguments for the retroactive application of N.J.S.A. 2A:4A-26.1(c)(1), it is because those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

IV.

Turning to defendant's ineffective assistance of counsel claim, a two-part test must be satisfied by demonstrating that: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. Strickland v. Washington, 466 U.S. 668, 682 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987).

In reviewing ineffective assistance claims, courts apply a strong presumption that a defendant's trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

12

judgment." Strickland, 466 U.S. at 690. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). "To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate a reasonable likelihood of succeeding under" the Strickland/Fritz test. Preciose, 129 N.J. at 463. To demonstrate the likelihood of succeeding under the Strickland/Fritz test, a defendant "must do more than make bald assertions . . . . [and] must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

Defendant contends that his trial counsel erred by failing "to raise [a] mistake of fact doctrine" defense and jury charge because defendant did not intend to kill the victim, but only to "rough him up." N.J.S.A. 2C:2-4 defines mistake of fact in relevant part as follows:

> a. Ignorance or mistake as to a matter of fact or law is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and:
>
> (1) It negatives the culpable mental state required to establish the offense; or
>
> (2) The law provides that the state of mind established by such ignorance or mistake constitutes a defense.
>
> b. Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is

not available if the defendant would be guilty of another offense had the situation been as he supposed. In such case, however, the ignorance or mistake of the defendant shall reduce the grade and degree of the offense of which he may be convicted to those of the offense of which he would be guilty had the situation been as he supposed.

As noted by the judge, a mistake of fact defense is commonly used "when a defendant asserts self-defense, defense of others or defense of property." In this case, the facts are a far cry from the statutory intent because "no one could reasonably believe [defendant's] actions were necessary to protect Lee." The victim "posed no threat after he ran from the group." After fleeing, he was thrown to the ground, and "stabbed and beaten with deadly force."

Based on our review of the record, we are satisfied that defendant's claim of ineffective assistance of trial counsel does not fall below the requisite standard under either prong of the Strickland/Fritz test.

We also find no merit to defendant's claim that he was denied effective assistance of appellate counsel for failing to argue that the verdict was against the weight of the evidence. Procedurally, a motion for a new trial was not made as required by Rule 2:10-1, therefore, the argument could not have been raised on appeal.

Here, we conclude that defendant failed to make a prima facie showing of ineffective assistance of counsel under the <u>Strickland</u>/<u>Fritz</u> test, and there was no abuse of discretion in the denial of his PCR petition without an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-4224-16T4